# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

CASEY RUMPH,

        Plaintiff,        CASE NO. 17-10496
                                   HON. DENISE PAGE HOOD

v.

RANDAZZO MECHANICAL HEATING & COOLING, INC.,

        Defendant.

_____/

## OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [#17]

**I.   BACKGROUND**

On February 15, 2017, Plaintiff Casey Rumph ("Rumph") filed a Complaint against Defendant Randazzo Mechanical Heating and Cooling, Inc. ("Randazzo") alleging Violations of the Americans with Disabilities Act ("ADA") (Count I); the Michigan Persons with Disabilities Civil Rights Act ("PWDCRA") (Count II); and Discrimination and Interference in Violation of the Family Medical Leave Act ("FMLA") (Count III). (Doc # 1) Randazzo filed a Motion for Summary Judgment on May 22, 2018. (Doc # 17) Rumph filed a Response on June 26, 2018. (Doc # 21) On July 10, 2018, Randazzo filed its Reply. (Doc # 24)

Rumph was employed by Randazzo on three separate occasions. (Doc # 17-2, Pg ID 114) Rumph was first employed by Randazzo from 2001 to 2007, and

1

was laid off during the economic downturn. *Id.* Rumph's employment, relevant to the instant action, began in December 2014, when she was asked by then New Construction Manager, Arthur Jason Luczak ("Luczak"), to work as a New Construction account manager. (Doc # 17-2, Pg ID 110) Rumph's job responsibilities included: online sales, backup for residential invoicing, overseeing employee timecards, scheduling invoicing, preparing proposals for new potential new clients, and checking inventory stock. (Doc # 17-2, Pg ID 121-122) At the time she was hired, Rumph informed Luczak that she had a previous opioid addiction, depression, anxiety, ADHD, and that she needed to see her doctor monthly. (Doc # 17-2, Pg ID 110) Rumph was freely permitted to attend her monthly doctor appointments. (Doc # 17-2, Pg ID 134)

In July 2015, her supervisor switched from Luczak to Deborah Collins ("Collins") because Randazzo was in the process of phasing out the New Construction department. (Doc # 17-2, Pg ID 121-122; Doc # 17-5, Pg ID 245-246) Rumph's job responsibilities were essentially the same after Collins became her supervisor. (Doc # 17-2, Pg ID 121-122)

According to Rumph, in early 2015, she was working with Randazzo's professional health benefits contact person, Jackie Ferranti ("Ferranti"), to get her Suboxone prescription filled. (Doc # 17-2, Pg ID 123-124) Rumph communicated with Ferranti through email in order to secure reimbursement for her medication.

(Doc # 21, Pg ID 296) On July 2, 2015, Collins was "cc"ed on email correspondence between Rumph and Ferranti. *Id.* Allegedly, Collins commented to Rumph that she could "not fathom what type of prescription would cost that much." (Doc # 17-2, Pg ID 123) Rumph testified that after this interaction, she told Collins about her addiction, ADHD, and depression problems, and mentioned that these medical issues required her to see her doctor every month. (Doc # 17-2, Pg ID 123-124; Doc # 17-3, Pg ID 182-183) Under Collins, Rumph was also granted the accommodation to attend her monthly doctor appointments. (Doc # 17-3, Pg ID 134)

Rumph alleges that in July 2015, Randazzo's CFO, Anthony Antoun's ("Antoun") attitude towards her changed drastically after Collins informed him about her opioid addiction. (Doc # 17-2, Pg ID 134-135) Collins and Antoun deny this. (Doc # 17-3, Pg ID 183-184; Doc # 17-4, Pg ID 229) Rumph claims that Antoun started nitpicking about her cigarette breaks and asked her to put her time cards in the time-card slots rather than keep them at her desk. (Doc # 17-2, Pg ID 135) Rumph also claims that she was singled-out at the end of December 2015 to do these things, and said that other employees were not required to do them until she pointed this out to Antoun. (Doc # 17-2, Pg ID 134-135)

Rumph alleges that Antoun made derogatory comments to her around August or September of 2015. (Doc # 17-2, Pg ID 135) For example, Rumph

recalls that one day when Antoun was leaving early for a softball game, he asked her sarcastically, "does anyone have a Vicodin I can have?" *Id.* Rumph further alleges that on April 15, 2015, when she was terminated, she overheard Collins tell Antoun that Rumph's termination was "illegal," to which Antoun responded that "Randazzo's has more money than Casey will ever see." (Doc # 17-2, Pg ID 135-136)

Rumph learned that her mother had Stage 4 cancer in January 2016, and she subsequently asked to go on FMLA leave sometime that month. (Doc # 17-2, Pg ID 129) In lieu of taking FMLA leave, Randazzo offered her six weeks unemployment, with the distribution being three weeks at twenty hours per week, and three weeks at thirty-two hours per week. *Id.* Given the severity of her mother's condition, Rumph declined that offer. *Id.* Rumph was formally granted FMLA leave beginning on January 18, 2016, and officially decided to take her leave on February 2, 2016. (Doc # 17-2, Pg ID 129-131; Doc # 17-6, Pg ID 257) Rumph was not working on a full-time basis after January 10, 2016. (Doc # 17-2, Pg ID 129-131)

On March 11, 2016, Randazzo sent Rumph a letter informing her that her FMLA leave was going to end on April 10, 2016. (Doc # 17-6, Pg ID 257) It was also communicated to Rumph that she was expected back to work on April 11, 2016. *Id.* Rumph's mother passed away on March 19, 2016, but Randazzo

allowed her to finish her scheduled twelve weeks of FMLA leave. (Doc # 17-2, Pg ID 131; Doc # 17-6, Pg ID 257)

During Rumph's FMLA leave, Randazzo made a business decision to eliminate the New Construction Department. (Doc # 17-6, Pg ID 264) This decision would result in the elimination of Rumph's previous position as New Construction Billing Clerk. *Id.* In an effort to relocate Rumph, Randazzo offered her the new position of Accounting and Finance Assistant upon her return from leave. *Id.* Rumph accepted this position on April 11, 2016. Randazzo alleges that this was apparent by Rumph's signature on the employer's Job Description Form. (Doc # 17, Pg ID 83; Doc # 17-6, Pg ID 283)

Rumph testified that upon returning to work in April 2016, her job responsibilities were substantially equivalent to what they had been prior to her leave. (Doc # 17-2, Pg ID 131) According to Rumph, she never voiced any disinterest in performing the job duties to which she was assigned. (Doc # 17-2, Pg ID 132) Randazzo alleges that although Rumph testified that she did not object to performing her new job responsibilities, she did express to management that she was reluctant to perform finance functions. (Doc # 17-2, Pg ID 131-133)

Rumph missed work on April 12, 2016 and April 13, 2016, but claims that she advised Collins via email and via text message that she would need to take those days off. (Doc # 17-2, Pg ID 132-133) Rumph returned to work on April

5

14, 2016. (Doc # 17-2, Pg ID 133) On April 15, 2016, Rumph was told that her position was being eliminated. *Id.* Collins testified that Rumph was terminated as a result of: (1) her chronic problems with attendance and punctuality; (2) her inability to perform the finance functions of her position; and (3) there not being enough work to keep her busy. (Doc # 17-3, Pg ID 170-173)

Rumph alleges that Randazzo violated the ADA and PWDCRA by terminating her employment due to her record of a disability and/or perceived disability. (Doc # 1, Pg ID 5-8) Rumph claims that as a direct and proximate result of Randazzo violating her rights under the ADA and PWDCRA as alleged, Rumph's terms, conditions, and privileges of employment were adversely affected. *Id.* Rumph also alleges that Randazzo violated her rights under the FMLA. (Doc # 1, Pg ID 9-10) Rumph asserts that after she exercised her ability and right to take approved FMLA medical leave, Randazzo took retaliatory and discriminatory actions against her. *Id.* These actions allegedly included, but were not limited to: (1) eliminating her position; and (2) placing her in a demoted position, and then terminating her. *Id.*

Rumph asks that this Court award her: (1) compensatory damages in whatever amount she is found to be entitled; (2) exemplary and punitive damages in whatever amount she is found to be entitled; (3) a judgment for lost wages and

benefits, past and future, in whatever amount she is found to be entitled; and (4) an award of interest, costs and reasonable attorneys' fees.

## II. ANALYSIS

### A. Standard of Review

The Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250-57 (1986). A fact is material if it could affect the outcome of the case based on the governing substantive law. *Id*. at 248. A dispute about a material fact is genuine if on review of the evidence, a reasonable jury could find in favor of the nonmoving party. *Id*.

The moving party bears the initial burden to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets this burden, the nonmoving party must "go beyond the pleadings and … designate specific facts showing that there is a genuine issue for trial." *Id*. at 324. The Court may grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *See Muncie Power Prods., Inc. v. United Tech. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003). "The mere existence of a scintilla of evidence in support of

the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. "Conclusory allegations do not create a genuine issue of material fact which precludes summary judgment." *Johari v. Big Easy Restaurants, Inc.*, 78 F. App'x 546, 548 (6th Cir. 2003).

When reviewing a summary judgment motion, the Court must view the evidence and all inferences drawn from it in the light most favorable to the nonmoving party. *Kochins v. Linden–Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir. 1986). The Court "need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). The Court's function at the summary judgment stage "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

**B. ADA and PWDCRA**

Randazzo argues that Rumph cannot establish a *prima facie* case under the ADA or the PWDCRA, and contends that the Court should grant Defendant's Motion for Summary Judgment. Rumph responds that she has sufficiently stated a *prima facie* case under the ADA and PWDCRA, and argues that there are genuine issues of material fact that preclude summary judgment.

The ADA provides that

> [n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a). To recover on a claim for discrimination under the ADA, a plaintiff must show that he or she: (1) is disabled; (2) otherwise qualified to perform the essential functions of the position, with or without accommodation; and (3) suffered an adverse employment action because of his or her disability. *See Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1178 (6th Cir. 1996). A plaintiff may do so "by introducing direct evidence of discrimination, including evidence that the employer relied upon the plaintiff's disability in making its employment decision, or by introducing indirect evidence of discrimination." *Id.* (citation omitted).

The ADA and PWDCRA "share the same purpose and use similar definitions and analyses," and Michigan courts "have relied on the ADA in interpreting the PWDCRA." *Chiles v. Mach. Shop, Inc.*, 238 Mich. App. 462, 472 (1999). For purposes of this Motion, the analysis under each is the same.

Both parties concede that Rumph cannot establish any direct evidence that proves that her termination was based on her disabilities. When assessing ADA and PWDCRA claims that involve indirect evidence, courts apply the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), burden-shifting framework. *Ferrari*

*v. Ford Motor Co.*, 826 F.3d 885, 891-92 (6th Cir. 2016). To establish a claim for disability discrimination under the indirect method, a plaintiff must first establish a *prima facie* case of discrimination by showing that: (1) he or she is disabled; (2) he or she is otherwise qualified for the position, with or without reasonable accommodation; (3) he or she suffered an adverse employment decision; (4) the employer knew or had reason to know of the plaintiff's disability; and (5) the position remained open while the employer sought other applicants or the disabled individual was replaced. *Id.* Once the plaintiff establishes a *prima facie* case under the indirect method, the burden shifts to the defendant to "offer a legitimate explanation for its action." *Monette*, 90 F.3d at 1186. If the defendant does so, the burden then shifts back to the plaintiff, who "must introduce evidence showing that the proffered explanation is pretextual." *Id.*

As Rumph stated, she has established her *prima facie* case. First, her medical conditions are considered disabilities under the ADA and the PWDCRA. Second, she presented evidence that she was qualified for her position. (Doc # 21, Pg ID 295) Third, she was terminated from her position. Fourth, her employer was aware of her disability beginning in July 2015. Fifth, she was replaced by a non-disabled individual. (Doc # 17-2, Pg ID 133-134; Doc # 21, Pg ID 312) According to the aforementioned framework, the burden shifts to Randazzo.

Randazzo asserts that even if Rumph could establish her *prima facie* case, there were two legitimate, nondiscriminatory reasons for her termination: (1) her absences on April 12th and April 13th; and (2) her inability and/or unwillingness to perform the financial functions of her position. In response, Rumph contends that the absences that she took on April 12th and April 13th were approved, and argues that she never expressed any disinterest in handling any financial responsibilities. In viewing the evidence in the light most favorable to Rumph, the Court finds that there are genuine issues of material fact with regard to the indirect evidence that Rumph has presented.

For the reasons set forth above, the Court denies Defendant's Motion for Summary Judgment on Plaintiff's ADA and PWDCRA claims (Counts I and II).

**C. FMLA**

Rumph argues that her rights have been violated under the FMLA. Under the FMLA, "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]." 29 U.S.C. § 2615(a)(1). The Sixth Circuit recognizes two distinct theories under the FMLA: (1) the "interference" theory, and (2) the "retaliation" theory. *Seeger v. Cincinnati Bell Telephone Co.*, 681 F.3d 274, 282 (6th Cir. 2012). Under the "interference" theory, "[i]f an employer interferes with the FMLA-created right to medical leave or to reinstatement following the leave, a

violation has occurred, regardless of the intent of the employer." *Id*. (internal quotations and citations omitted). But, under the retaliation theory, the intent of the employer is relevant, and the inquiry is "whether the employer took the adverse action because of a prohibited reason or for a legitimate nondiscriminatory reason." *Id*.

### 1. Interference Theory

Rumph alleges that Randazzo interfered with her ability to exercise her rights under the FMLA. It is unlawful for employers to "interfere with, restrain or deny the exercise of or attempt to exercise, any [FMLA] right provided." 29 U.S.C. § 2615(a)(1); *Grace v. USCAR*, 521 F.3d 655, 669 (6th Cir. 2008). To establish a *prima facie* case of FMLA interference, also known as failure to restore, a plaintiff must show that: (1) she was an eligible employee; (2) the defendant was an employer as defined under the FMLA; (3) the employee was entitled to leave under the FMLA; (4) the employee gave the employer notice of her intention to take leave; and (5) the employer denied the employee FMLA benefits to which she was entitled. *Id*.; *Killian v. Yorozu Auto. Tenn., Inc.*, 454 F.3d 549, 556 (6th Cir. 2006). Employees returning from FMLA leave are not entitled to restoration unless their employment would have continued had they not taken FMLA leave. *Grace*, 521 F.3d at 669.

Once a plaintiff establishes a *prima facie* case of FMLA interference, the burden shifts to the employer to provide a legitimate, nondiscriminatory reason to justify its actions. *Id.* If the employer provides a legitimate reason, the burden shifts back to the plaintiff to show pretext. *Id.* at 670.

Since Randazzo concedes that Rumph has satisfied the first four elements of her burden of proof in an FMLA interference claim, the only element in dispute is whether Randazzo denied Rumph any FMLA benefits or interfered with any FMLA benefits or rights to which she was entitled. The Court finds that there is a genuine dispute as to whether or not Rumph was reinstated to her prior position. Under the FMLA, "any eligible employee who takes leave . . . shall be entitled, on return from such leave: (A) to be restored by the employer to the position of employment held by the employee when the leave commenced; or (B) to be restored to an equivalent position. . . ." 29 U.S.C. § 2614(a)(1). A reasonable jury could find that Rumph was not "restored to an equivalent position" since she was terminated days after she returned to work. Therefore, Rumph could make out her *prima facie* case for her FMLA claim under this theory. Even though Randazzo offered legitimate reasons that explain why Rumph was terminated, she has demonstrated to the Court that a jury could find those reasons to be pretextual. (Doc # 21, Pg ID 304)

## 2. Retaliation Theory

Rumph also alleges that Randazzo took retaliatory actions against her. To establish a *prima facie* case of FMLA retaliation, a plaintiff must show that: (1) she was engaged in an activity protected by the FMLA; (2) the employer knew that she was exercising her rights under the FMLA; (3) after learning of the employee's exercise of FMLA rights, the employer took an employment action adverse to her; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action. *Donald v. Sybra, Inc.*, 667 F.3d 757, 761 (6th Cir. 2012). To show a causal connection, a plaintiff "must produce sufficient evidence to support an inference that [the defendant] took the adverse employment action because" the plaintiff engaged in protected activity. *Ozier v. RTM Enterprises of Georgia, Inc.*, 229 Fed. App'x 371, 377 (6th Cir. 2007). If the defendant provides a legitimate, nondiscriminatory reason for terminating the plaintiff, the burden shifts back to the plaintiff to show that the defendant's stated reasons are a pretext for unlawful discrimination. *Id.* Temporal proximity alone cannot be the sole basis for finding pretext. *Seeger*, 681 F.3d at 285. However, temporal proximity coupled with other independent evidence may indicate pretext. *Id.*

Randazzo does not dispute that Rumph has satisfied the first two prongs of the FMLA retaliation analysis, but argues that she cannot satisfy the last two prongs. Randazzo contends that Rumph allegedly cannot establish that she suffered an adverse employment action since her new position was substantially

equivalent to her prior position. Randazzo also asserts that Rumph cannot establish that there was a causal connection between her decision to exercise her FMLA rights and her termination.

The Court finds that Rumph has established that there is a genuine dispute with regard to her FMLA claim under a retaliation theory. First, the third prong of the aforementioned analysis has been satisfied. Randazzo argues that Rumph did not suffer an adverse employment action when she received a new position upon returning from FMLA leave. However, Randazzo fails to acknowledge that Rumph also claims that her termination qualifies as an adverse employment action. Second, the fourth prong of the analysis has also been satisfied. Rumph indicates that the causal connection between her FMLA leave and her termination is evident because: (1) she was terminated days after she returned to work; and (2) there is direct evidence that Rumph's termination was at least partially attributed to discrimination. Those two facts considered together support an inference that Randazzo terminated Rumph because she engaged in a protected activity. Although Randazzo presented two legitimate, non-discriminatory reasons for terminating Rumph, the Court finds that Rumph has sufficiently demonstrated that those reasons could be considered pretextual.

For the reasons set forth above, the Court denies Defendant's Motion for Summary Judgment on Plaintiff's FMLA claim (Count III).

## III. CONCLUSION

For the reasons set forth above,

IT IS HEREBY ORDERED that Defendant Randazzo Mechanical Heating and Cooling, Inc.'s Motion for Summary Judgment (Doc # 17, filed May 22, 2018) is **DENIED**.

                                        s/Denise Page Hood
                                        Chief Judge, U. S. District Court

Dated: November 8, 2018

I hereby certify that a copy of the foregoing document was served upon counsel of record on November 8, 2018, by electronic and/or ordinary mail.

                                        S/LaShawn R. Saulsberry
                                        Case Manager